PER CURIAM.
' This matter is before the Court on Respondent’s Petition for Leave to Resign Permanently Pending Disciplinary Proceedings pursuant to article XI, Rule 11.08 of the Integration Rule of The Florida Bar.
The petition states:
1. [Respondent] is and at all times hereinafter mentioned was a member of The Florida Bar subject to the jurisdiction of the Supreme Court of Florida.
2. That on the 22nd day of April, 1983, the Supreme Court of Florida in Case No. 63,526 temporarily suspended [Respondent] from the practice of law pursuant to article XI, Rule 11.10(6) of the Integration Rule of The Florida Bar.
3. That at all times incident to The Florida Bar’s investigation and processing of these complaints, [Respondent] has been aware of his right to counsel, his right to confront his accusers, his right against self-incrimination, his right to call witnesses on his own behalf, his right to a hearing before a referee appointed by the Supreme Court of Florida, and hereby acknowledges his waiver of same.
4. The following constitutes a statement of all pending complaints filed against [Respondent] with The Florida Bar:
A) In The Florida Bar Case No. 17A83F13 it is alleged that:
i) [Respondent] was the settlement agent on the sale of a condominium unit, which was one of several parcels involved in a tax deferred exchange under I.R.S. Rule 1031.
ii) Under the terms of the Contract for Sale and Purchase, the buyers were to receive a title insurance commitment and title insurance policy.
iii) After completion of the overall transaction, ten (10) months following the closing, a title insurance policy was mailed by [Respondent] to the buyers.
iv) The buyer’s attorney received the commitment which normally precedes the final title insurance policy and certain exceptions on said commitment were discussed with buyer’s attorney prior to closing.
v) [Respondent] was requested to provide an explanation as to certain exclusions on the title insurance policy, being the same as previously discussed with buyer’s attorney, and the delay in issuing *955 same by the buyer’s out of state attorney.
vi)The explanations requested have failed to satisfy the buyer’s out of state attorney, notwithstanding the fact that the questions were about the “standard” exceptions which appear on virtually every title policy issued through United States Underwriters.
B)In The Florida Bar Case No. 17A83F33 it is alleged that:
i) [Respondent] entered into an escrow agreement with Developers of South Florida, Inc. by and through its president, R.J. Mulhern, Sr., (hereinafter referred to as “Mulhern”).
ii) Pursuant to said agreement, [Respondent] was to handle closings for Developers of South Florida, Inc., and hold deposit monies in escrow in an account labeled Sequoia Gardens Escrow Account.
iii) [Respondent] acknowledged to Mul-hern that his escrow account did not contain sufficient funds to cover a check in the amount of approximately Thirty-two Thousand Dollars ($32,000.00) that [Respondent] had issued to Cold Heading Company regarding a closing and that said funds had been used for other purposes.
iv) [Respondent’s] sworn statement was taken by The Florida Bar on or about November 18, 1983. [Respondent] stated therein that Mulhern’s business owed him monies for attorneys fees and that certain checks were written to [Respondent] from the Sequoia Gardens escrow account by [Respondent’s] office concerning attorney fees.
v) Mulhern has stated that [Respondent] was not authorized at any time to take any monies as attorneys fees from the Sequoia Gardens escrow account.
vi) [Respondent] eventually reimbursed the sum of Thirty-two Thousand Dollars ($32,000.00) to Developers of South Florida, Inc. The entire Thirty-two Thousand Dollars ($32,000.00) was to have been held in trust by [Respondent] and applied to the benefit of Cold Heading Company.
vii) [Respondent] issued a check to the trust account of the successor attorney for Developers of South Florida, Inc. re-, fleeting certain deposits held by [Respondent] in the Sequoia Gardens Trust Account.
viii) The foregoing check was dishonored for insufficient funds.
C) In The Florida Bar Case No. 17A83F50 it is alleged that:
i) [Respondent’s] law firm was retained to handle an estate.
ii) The representation was undertaken by [Respondent’s] office.
iii) Fees collected were in excess of the work which was beneficial to the client, notwithstanding that the hours expended were correctly reflected.
iv) [Respondent] agreed to refund Thirteen Hundred Dollars ($1,300.00) to the client.
v) A check drawn on [Respondent’s] regular account for that amount was presented to the client.
vi) The check was not honored by [Respondent’s] bank due to insufficient funds.
vii) [Respondent] eventually made good on the check but only after a grievance was filed against him.
viii) [Respondent’s] employment and utilization of an out of state attorney on this matter may have been violative of Disciplinary Rules 3-101(A), 3-102(A), and 3-104 of the Code of Professional Responsibility, which is being determined by an investigation by The Florida Bar.
D) In The Florida Bar Case No. 17A83F99, it is alleged that:
i) [Respondent] was retained to represent clients in the sale and assignment of a lease they had previously entered into.
ii) Subsequent to the closing on the sale and assignment of the leasehold interest, the lessor insisted that provision be made to ensure prompt payment of monthly payments due him under the lease.
iii) Under the terms of the lease, [Respondent’s] clients were still ultimately responsible for such payments.
*956 iv) [Respondent’s] clients entrusted sufficient sums of money to the [Respondent] so that prompt payment of the monthly lease payments could be made to the lessor.
v) [Respondent’s] clients made an arrangement with him whereby [Respondent] would give a check drawn on his trust account to the lessor every month with said funds to be replaced with payments made to [Respondent’s] trust account by the assignee of the leasehold as consideration for the assignment of lease.
vi) A trust account check was rendered by [Respondent] to the lessor on behalf of his clients which was returned for insufficient funds.
vii) [Respondent] was unable to provide funds to his clients which were held in trust by him on their behalf.
viii) [Respondent] directed a letter dated January 20, 1983, to his clients wherein he admitted that he could not produce the funds which his clients had entrusted to him and which were to be held for a specific purpose.
5. To the best of [Respondent’s] knowledge and belief, no other cases or complaints are currently under investigation by The Florida Bar.
6. [Respondent] acknowledges and admits the accuracy of the allegations lodged against him as enumerated in Paragraph four (4) of this Petition.
7. [Respondent] further acknowledges and admits that certain of the foregoing allegations constitute violations of the Code of Professional Responsibility and the Integration Rule of The Florida Bar.
8. [Respondent] agrees to cooperate with any Client Security Fund investigation conducted by The Florida Bar.
9. [Respondent] hereby agrees that he will make restitution to all persons who have lost funds that were entrusted to him.
10. [Respondent] further agrees to pay the costs of The Florida Bar audit that has been instituted pertaining to alleged trust account violations.
[Respondent] hereby acknowledges that there is no basis to maintain confidentiality in this matter and acknowledges his waiver of same.
[Respondent] avers that the public interest will not be adversely affected by the granting of this petition, and that granting this petition will not adversely affect the purity of the courts nor hinder the administration of justice nor the confidence of the public in the legal profession.
The Florida Bar having now filed its response supporting the Petition for Leave to Resign Permanently on the conditions set forth above, and the Court having reviewed the same and determined that the requirements of Rule 11.08(3) are fully satisfied, the Petition for Leave to Resign Permanently is hereby approved and respondent’s name is hereby stricken from the roll of attorneys in the State of Florida effective immediately.
Costs in the amount of $3,467.44 are hereby taxed against Respondent.
It is so ordered.
ADKINS, Acting C.J., and OVERTON, McDonald, EHRLICH and SHAW, JJ., concur.